## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| EGBERT J. DACOSTA, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| vs. | } | CASE NO. 2:09-cv-02609-SLB |
| | } | |
| THE WATER WORKS AND SEWER | } | |
| BOARD OF THE CITY OF | } | |
| BIRMINGHAM, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

This case is currently before the court on defendant The Water Works Board of the City of Birmingham's ("the Board") Motion to Strike, (Doc. 7),[1] and its Motion to Dismiss, (Doc. 8). Plaintiff Egbert J. DaCosta ("DaCosta") has filed suit against the Board, his former employer, under Title VII, alleging discrimination on the basis of race, national origin, and sex, pursuant to 42 U.S.C. § 1981, alleging discrimination on the basis of race and national origin, and under the Age Discrimination in Employment Act (the "ADEA"), alleging age discrimination. (Doc. 1 at ¶¶ 13-18.) DaCosta has also brought retaliation claims under Title VII, § 1981, the ADEA, the Alabama Age Discrimination in Employment Act (the "AADEA"), and the Family Medical Leave Act (the "FMLA"). (*Id.* at ¶ 19.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

relevant law, the court is of the opinion that the Board's Motion to Dismiss, (Doc. 8), is due to be granted in part and denied in part, and its Motion to Strike, (Doc. 7), is due to be granted.

## I.  MOTION TO DISMISS STANDARD

When deciding a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the court "must accept the allegations set forth in the complaint as true." *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993) (citations omitted); *see also Rivell v. Private Healthcare Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008).

> The allegations in the complaint are taken as true and construed in the light most favorable to the plaintiffs.  [*Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002).] However, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, [545], 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir.2007).  "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Watts*, 495 F.3d at 1295 (quoting *Twombly*, [550 U.S. at 556]). This rule does not "impose a probability requirement at the pleading stage." *Twombly*, [550 U.S. at 556].  Instead, the standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required element.  *Id*.  "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" *Watts*, 495 F.3d at 1296 (quoting *Twombly*, [550 U.S. at 556]).

*Rivell*, 520 F.3d at 1309.

"[T]he threshold that a complaint must meet to survive a motion to dismiss is 'exceedingly low.'" *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 38 (M.D. Ala. 2001) (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)).  "[A]

defendant thus bears the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-736 (11th Cir. 1998) (citing *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)).

What's more, the United States Court of Appeals for the Eleventh Circuit has reiterated that "'*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'"[2] *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

## II.  FACTUAL AND PROCEDURAL HISTORY

DaCosta is a forty-seven year old male of Indian heritage, originally from the continent of Asia, currently residing in Birmingham, Alabama.  (Doc. 1 at ¶ 1.)  DaCosta began his employment with the Board in March of 1997, hired as a computer operator.  (*Id.* at ¶ 7.)  He continued in that position until March 7, 2008, when the Board terminated his employment with the company.  (*Id.* at ¶¶ 7, 9.)

According to the Complaint, the events leading up to DaCosta's termination initially

---

[2] Although DaCosta has since retained counsel, his Complaint remains a *pro se* pleading, and, as such, will be liberally construed.  (*See* Doc. 1 at 8; Doc. 2; Doc. 3.)  However, the court will not apply this standard to DaCosta's subsequent pleadings.

began on August 20, 2007.[3]   (*See id.* at ¶ 8.)   On that date, DaCosta filed an internal complaint with the Board's management, requesting that the Board open an investigation into "several matters," including "the filing of a false statement/affidavit by a current Human Resource Official" in federal court.  (*Id.*)  The Board declined DaCosta's request, responded with "threats of reprisal and termination," and refused DaCosta training and education.  (*Id.*)  DaCosta alleges that "[o]ther white and black and male and female and similarly situated employees in the Information Technology department were not treated in a similar manner in relation to pursuing education, training, promotion, annual evaluations and annual pay increases."  (*Id.*)  Specifically, he alleges that, "unlike other employees in the Information Technology Department," the Board denied him an evaluation for the 2007 year, which "directly and adversely affect[ed] his hours and daily wages, resulting in a decreased monetary rate of pay in 2008," as well as decreased future pay, such as his pension.  (*Id.*)  As a result, on February 15, 2008, DaCosta filed a Charge of Discrimination, Charge No. 420-2008-01348 ("Charge I"), with the United States Equal Employment Opportunity Commission (the "EEOC"), alleging discrimination on the basis of national origin, as well as retaliation.  (*Id.*; Doc. 9, Ex. A.)

Just after filing Charge I, on February 18, 2008, DaCosta, under certain restrictions, returned to work from a period of medical leave pursuant to the FMLA.  (Doc. 1 at ¶ 9.)

---

[3] Although the Complaint alleges that "DaCosta endured over 11 years" of "continuous and systematic disparate treatment and retaliation," (Doc. 1 at ¶ 8), DaCosta has not asserted any facts to support this allegation, (*see generally id.*).

DaCosta complains that he returned to a "hostile environment," reiterating that in addition to the Board's denial of his annual evaluation and opportunities for education advancement, the Board also "refus[ed] to pay overtime in a timely manner," and "required [DaCosta] to have more education than similarly situated Computer Operators and lesser employees in order to be promoted on the job in the Information Technology Department." (*Id.* at ¶ 10.) DaCosta also notes that the Board required him "to train his potential replacement," a black female. (*Id.* at ¶ 9.) He states that following her training, the Board offered her the position, but she declined. (*Id.*) Nevertheless, he claims that the Board hired a black male for the position, adding that neither the black male nor the black female were in the protected age group. (*Id.*) *See also infra* note 7. Subsequently, on March 7, 2008, DaCosta met with Mr. Mac Underwood, the Board's General Manager, and Mr. Paul Lloyd, its Human Resource Manager. (*Id.*) The two presented DaCosta with a termination letter during the meeting, offering no further explanation regarding the Board's decision. (*Id.*) Following his termination, on August 22, 2008, DaCosta filed a second Charge of Discrimination, Charge No. 420-2008-03365 ("Charge II"), alleging discrimination on the basis of race, national origin, age, and disability, as well as retaliation. (*Id.*; Doc. 9, Ex. B.)

The EEOC issued DaCosta a Right to Sue Letter, with respect to Charge I, on October 6, 2009. (Doc. 1 at ¶ 5.) DaCosta received a Right to Sue Letter as to Charge II on November 4, 2009. (*Id.* at ¶ 6.) Then, on December 30, 2009, DaCosta, proceeding *pro se*,

filed suit against the Board.[4]  (*See id.* at 8.)

In his *pro se* Complaint, DaCosta alleges seven counts against the Board, including Count One, race discrimination under Title VII, Count Two, race discrimination pursuant to § 1981, Count Three, national origin discrimination under Title VII, Count IV, national origin discrimination pursuant to § 1981, Count Five, gender discrimination under Title VII, Count Six, age discrimination under the ADEA, and Count Seven, retaliation under Title VII, § 1981, the ADEA, the AADEA, and the FMLA.  (*Id.* at ¶¶ 13-19.)  In response, on May 19, 2010, the Board filed a Motion to Strike, (Doc. 7), and Motion to Dismiss, (Doc. 8). Contemporaneously with the Motions, the Board also filed a Brief in Support of Motion to Dismiss, attaching copies of Charge I and Charge II as Exhibits A and B, respectively.[5] (Doc. 9 & Exs. A-B.)  Thereafter, DaCosta, who retained counsel after filing his Complaint, (*see* Doc. 2; Doc. 3), filed Responses to the Board's Motions on June 11, 2010, (Doc. 11; Doc. 12).  The Board then filed a Reply Brief in Support of Motion to Dismiss on June 24,

---

[4] Although the Board points out that "[t]his is not the first time that [DaCosta] has been before this Court asserting that he had been discriminated against and retaliated against by the Board," (*see* Doc. 9 at 2-3 (citing *Dacosta v. Water Works & Sewer Bd.*, No. 2:03-cv-01570-SLB (N.D. Ala. Mar. 12, 2007), *aff'd*, 256 F. App'x 283 (11th Cir. 2007))), DaCosta's prior case and subsequent appeal remain, at this time, irrelevant.

[5] While the Board attached the two exhibits in support of a motion to dismiss pursuant to Rule 12(b)(6), which would generally require that the court convert the motion to one for summary judgment under Rule 56, *see* Fed. R. Civ. P. 12(d), the Board's attached exhibits are undisputed in terms of authenticity, and central to DaCosta's claims, (*see* Doc. 9 at Exs. A-B).  For that reason, the court need not convert the motion to dismiss to one for summary judgment.  *See, e.g.*, *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (noting that a court need not convert a 12(b)(6) motion to dismiss to a motion for summary judgment when considering a document outside the four corners of the complaint if the document is "central to the plaintiff's claims and is undisputed in terms of authenticity" (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

2010.  (Doc. 13.)  The court held oral argument on the Board's Motions on August 3, 2010.

## III.  DISCUSSION

### A.    THE BOARD'S MOTION TO DISMISS, (DOC. 8)

In its Brief in Support of Motion to Dismiss, the Board argues that some of DaCosta's claims are due to be dismissed because they rest on allegations not contained in Charge I or Charge II, while others fail to meet the pleading requirements of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  (*See* Doc. 9-15.) Additionally, the Board points out that DaCosta has also alleged claims that have no basis in law.  (*See id.* at 7, 16.)  The court addresses these arguments more specifically below.

### 1.    COUNTS ONE, TWO, THREE, AND FOUR

Counts One through Four of the Complaint allege discrimination on the basis of race and national origin, brought separately under Title VII and § 1983.  (Doc. 1 at ¶¶ 13-16.) Title VII provides that it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2 (a)(1).  Similarly, § 1981 prevents against racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits,

privileges, terms, and conditions of the contractual relationship." *Id.* § 1981 (b).  As the Board correctly notes, because "[t]he analysis or framework initially applied to determine whether a plaintiff has established a claim under § 1981 is essentially the same as the analysis applied under Title VII," (*see* Doc. 9 at 7 (citations omitted)), courts often analyze the claims together, *see, e.g.*, *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009).  Thus, to state a *prima facia* claim for intentional discrimination under either statute, absent direct evidence of a discriminatory intent, a plaintiff must demonstrate that: "(1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (*per curiam*)).  Still, as DaCosta correctly points out, (*see* Doc. 11 at 2-3), "[t]he Supreme Court . . . has held that the prima facie case under *McDonnell-Douglas* is an evidentiary standard, not a pleading requirement," *Byrne v. Ala. Alcoholic Beverage Control Bd.*, No. 2:06-CV-1083-WKW, 2008 WL 4080771, at *10 (M.D. Ala. Sept. 3, 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)); so, to survive a 12(b)(6) motion to dismiss, a plaintiff "need only provide enough factual matter (taken as true) to suggest intentional discrimination," *id.* (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)) (internal quotation marks omitted).

In the instant case, the Board concedes the first element necessary for a *prima facie*

claim, but argues that DaCosta has failed to satisfy the remaining elements.  (Doc. 9 at 9-11.)

Specifically, the Board alleges that DaCosta has not shown that "he was qualified for the

position he held, that he suffered some type of adverse employment action, or that someone

from outside his protected class was treated more favorably than he was."  (*Id.* at 10.)  The

court disagrees.  Indeed, the Complaint alleges, *inter alia*, that DaCosta held the position of

computer operator for approximately eleven years, that the Board terminated his employment

on March 7, 2008, and that the Board hired a black male as DaCosta's replacement.[6]  (*See*

---

[6] The court also finds relevant the Complaint's allegations that, unlike similarly situated employees, including black and white, and male and female employees, the Board denied DaCosta an evaluation for the 2007 year, which "directly and adversely affect[ed] his hours and [pay]," denied DaCosta training and certain educational opportunities, and required DaCosta "to have more education" and "meet unequal promotion terms."  (Doc. 1 at ¶¶ 8, 10.)  And, while the Board argues that allegations of unequal educational and promotion standards constitute "new allegations," which "are . . . due to be dismissed for not being properly presented in [DaCosta's] EEOC charges, (Doc. 9 at 15), the court again disagrees.  Indeed, although the Board is correct that "[a] lawsuit may be brought under Title VII only if the alleged discrimination has been made the subject of a timely-filed charge with the EEOC," (*id.* at 14 (citing *Alexander v. Fulton County, Ga.*, 207 F.3d 1303 (11th Cir. 2000)), it remains that "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint," *Tillery v. ATSI, Inc.*, No. CV-01-S-2736-NE, 2003 WL 25699080, at *1 (N.D. Ala. 2003) (citing *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).

> Instead, the claims that may be alleged in a judicial complaint are limited by four boundaries: (I) the specific claims alleged in the underlying EEOC charge; (ii) those claims which are "like or reasonably related to" those alleged in the underlying charge; (iii) the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination; and (iv) those discriminatory acts which were in fact considered during the EEOC's investigation.

*Id.* (internal footnotes omitted).  Simply put, given the similarity between the Complaint's "new allegations" and those actually stated in Charge I and Charge II, (*compare* Doc. 1 at ¶ 10, *with* Doc. 9 at Exs. A-B), the court finds that the additional allegations merely "'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint," and are therefore not improper.  *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Wu v. Thomas*, 863 F.2d 1543, 1548 (11th Cir. 1989)).

Doc. 1 at ¶¶ 8-9.)  Simply put, when given a liberal construction, *see Miller*, 541 F.3d at 1100

(stating that "*pro se* pleadings are . . . [to] be liberally construed'" (quoting *Tannenbaum*, 148

F.3d at 1263)), and "construed in the light most favorable to [DaCosta]," *see Rivell*, 520 F.3d

at 1309 (citing *Hoffman-Pugh*, 312 F.3d at 1225), the court finds that  these allegations

satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain

statement of the claim showing that the pleader is entitled to relief"), and "give [the Board]

fair notice of what [DaCosta's] claims are and the grounds upon which the claims rest."

*Swierkiewicz*, 534 U.S. at 514 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled*

*on other grounds by Twombly*, 550 U.S. at 561) (holding that employee had adequately stated

national origin discrimination claim because his complaint "detailed the events leading to his

termination, provided relevant dates, and included the ages and nationalities of at least some

of the relevant persons involved with his termination.") (citation omitted); *cf. Damon v.*

*Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999) ("'[I]n cases where

a plaintiff has held a position for a significant period of time, qualification for that position

sufficient to satisfy the test of a prima facie case can be inferred.'" (quoting *Young v. Gen.*

*Foods Corp.*, 840 F.2d 825, 830 n.3 (11th Cir. 1988)).

That said, the court also finds that DaCosta's claims of race and national origin

discrimination suffer from certain procedural deficiencies, and consequently must be

repleaded.  First, as noted by the Eleventh Circuit, "§ 1981 does not provide an implicit cause

of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for

violation by state actors of the rights guaranteed under § 1981." *Bryant*, 575 F.3d at 1288 n. 1 (citing *Butts v. County of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000)).  Accordingly, because the Board constitutes a state actor, (*see* Doc. 9 at 16; Doc. 11 at 14), DaCosta must replead any § 1981 claims under § 1983.  Additionally, the Eleventh Circuit has also made clear that "[b]y its very terms, § 1981 applies to claims of discrimination based on race, not national origin." *Tippie v. Spacelabs Med., Inc.*, 180 F. App'x 51, 56 (11th Cir. 2006) (citing § 1981(a)).  And, while the *Tippie* decision is unpublished, and therefore not binding authority, this court finds that the decision likely represents the manner in which the Eleventh Circuit will resolve the issue.  *See* 11th Cir. R. 36-2 ("An opinion shall be unpublished unless a majority of the panel decides to publish it.  Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.")  As such, any claim in DaCosta's Amended Complaint alleging national origin discrimination pursuant to § 1981, even if brought under § 1983, will be due to be dismissed.

2.    <u>COUNT FIVE</u>

Count Five of the Complaint alleges gender discrimination under Title VII, (Doc. 1 at ¶ 17), and warrants only brief discussion.  Indeed, the Board points out that "[DaCosta] did not assert a claim for discrimination based on his sex in either . . . Charge I or . . . Charge II.  As such, he cannot now assert such a cause of action," (Doc. 9 at 15).  DaCosta has acknowledged the same, (*see* Doc. 11 at 13); as a result, the Board's Motion to Dismiss is

due to be granted as to Count Five, and Count Five is due to be dismissed.

3.      COUNT SIX

In Count Six, DaCosta alleges age discrimination under the ADEA.[7]  (Doc. 1 at ¶ 18.)

Like Title VII, *see supra* Part III.A.1, the ADEA similarly makes it "unlawful for an

employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's age," 29 U.S.C. § 623(a)(1).  To state a *prima

facie* claim under the ADEA, again following Title VII, a plaintiff must demonstrate that "he

or she was: (1) a member of the protected class; (2) qualified for the position; (3) subjected

to adverse employment action; and (4) replaced by a person outside the protected class or

suffered from disparate treatment because of membership in the protected class."[8]  *Kelliher

v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002) (citations omitted).

In its Brief in Support of Motion to Dismiss, the Board first submits that "[t]he only

---

[7] The parties dispute whether DaCosta has also alleged a discrete claim under the AADEA.
(*See* Doc. 9 at 11; Doc. 11 at 8-9.)  While the Board is correct that Count Six fails to mention the
AADEA, (*see generally* Doc. 1 at ¶ 18), the court nonetheless agrees with DaCosta that "paragraph
3 of the Complaint makes clear that [DaCosta] meant to invoke the protection of both the ADEA *and*
the AADEA," (Doc. 11 at 8).  Indeed, Count Six expressly realleges all previously asserted
allegations.  (Doc. 1 at ¶ 18.)  As a result, given a liberal construction, *see Miller*, 541 F.3d at 1100,
the court finds that Count Six pleads violations of both statutes.  Still, in his Amended Complaint,
DaCosta will be required to assert the causes of action in separate and discrete counts.

[8] To be a member of the ADEA's protected class, a plaintiff must be at least forty years old.
*See, e.g.*, *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 849, 851 (11th Cir. 1997).

allegation contained in [DaCosta's] Complaint concerning [age discrimination] is found in Count Six," where "[DaCosta] claims that the Board 'in express violation of the ADEA failed to promote' him."  (Doc. 9 at 11 (quoting Doc. 1 at ¶ 18).)   However, the Board argues that "[DaCosta] did not assert a claim [under the ADEA] in . . . Charge I," and that "[i]n . . . Charge II, there is no allegation or assertion that the Board failed to 'promote' [DaCosta]."  (*Id.* at 11-12.)  As such, the Board posits that "[DaCosta's] claim that he was denied a promotion is time-barred," and, as a result, maintains that DaCosta's ADEA claim should be dismissed.  (*Id.* at 12.)

In response, DaCosta contends that while the Complaint includes a claim for failure to promote, the Complaint also asserts a claim based on DaCosta's termination.  (Doc. 11 at 6-7.)  Particularly, DaCosta points out that "[w]hile Count Six . . . does style itself in part as a 'failure to promote' claim, part (c) claims all back pay and fringe benefits from the date of his termination."  (*Id.* at 7.)  In addition, DaCosta notes that paragraph 9 also asserts a violation of the ADEA, and alleges "that the [Board] terminated [DaCosta] and replaced him with a younger employee."  (*Id.*)

Initially, the court agrees with DaCosta that, when liberally construed, *see Miller*, 541 F.3d at 1100, the Complaint alleges that the Board violated the ADEA by terminating DaCosta.  And, the court likewise agrees that DaCosta has adequately stated a *prima facie* case for the claim.  Indeed, the Complaint alleges that DaCosta, forty-seven years old at all times pertinent, held the position of computer operator for approximately eleven years, that

the Board terminated his employment on March 7, 2008, and replaced him with a black male under the age of forty.  (*See* Doc. 1 at ¶¶ 1, 9.)  These allegations are sufficient for DaCosta's ADEA claim, premised on his termination, to survive a Rule 12(b)(6) motion to dismiss.[9] *See Damon*, 196 F.3d at 1358-60 (holding that former supermarket employees stated *prima facie* case under the ADEA because employees were fifty-one years old and forty-two years old when terminated, had held their positions for thirty-four years and thirteen years, respectively, and were replaced by individuals under the age of forty); *see also Swierkiewicz*, 534 U.S. at 514 ("'Indeed it may appear on the face of the pleadings that a recovery is remote and unlikely but that is not the test.'" (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984))).

Next, regarding DaCosta's ADEA claim based on the Board's alleged failure to promote him, the court agrees that neither Charge I nor Charge II expressly states that the Board failed to promote DaCosta.  (*See generally* Doc. 9 at Exs. A-B.)  Yet, it remains, as stated above, *see supra* note 6, that a "plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint," *Tillery*, 2003 WL 25699080, at *1 (citing *Cheek*, 31 F.3d at 500).  Rather, claims that "'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint" are permissible, whereas "allegations of new acts of discrimination are inappropriate." *Gregory*, 355 F.3d at 1279-80

---

[9] And, because the framework applied in AADEA cases models ADEA cases, the court likewise finds that DaCosta has satisfied the pleading requirements for his corresponding AADEA claim.  *See Robinson v. Ala. Cent. Credit Union*, 964 So. 2d 1225, 1228 (Ala. 2007).

(quoting *Wu*, 863 F.2d at 1548) (noting that "a 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination,'" (quoting *Alexander*, 207 F.3d at 1332)).  To that end, the proper inquiry under Eleventh Circuit precedent is "whether [DaCosta's] complaint was like or related to, or grew out of, the allegations contained in [Charge I and Charge II]."[10]  *See id.*

Here, in Charge I, DaCosta stated that the Board "refused [him] training and education."  (Doc. 9 at Ex. A.)  DaCosta insists that it is these "educational opportunities which lead to promotions," and that "[t]he Complaint simply makes this more explicit by asserting that [DaCosta] was denied the opportunity for educational advancement, and was required to have more education than similarly situated Computer Operators and lesser employees in order to be promoted."  (Doc. 11 at 8 (citing Doc. 1 at ¶ 10).)  The Board does not respond to this specific argument in its Reply Brief, but instead reiterates that "the[] allegations [contained in paragraph 10 of the Complaint] were not presented in either of [DaCosta's] underlying EEOC charges."  (Doc. 13 at 5.)

Although close, the court agrees that DaCosta's failure to promote claim could "'reasonably be expected to grow out of [his EEOC Charges].'"  *See Gregory*, 355 F.3d at 1280 (quoting *Alexander*, 207 F.3d at 1332)).  Particularly, the court notes that, like *pro se*

---

[10] Despite the Board's suggestion that, because DaCosta failed to explicitly allege age discrimination in Charge I, the court should only consider the allegations contained in Charge II, (*see* Doc. 9 at 11-12), the court disagrees.  Indeed, in investigating Charge II, the EEOC would naturally inquire into the allegations contained in Charge I; as DaCosta notes, Charge II references Charge I, and both "stem from the same conduct on the part of the [Board]."  (Doc. 11 at 8.)

judicial complaints, EEOC charges drafted without the assistance of counsel "should be construed liberally." *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 161-62 (5th Cir. 1971);[11] *cf. Gregory*, 355 F.3d at 1280 (reasserting that courts are "'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII],'" (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970))).  As such, the court finds the Board's argument that DaCosta's failure to promote claim is time-barred to be unpersuasive.

Still, the Board also argues that "simply alleging that the Board 'failed' to promote [DaCosta] is . . . nothing but a 'naked assertion' without plausible factual support," and therefore insufficient under the pleading requirements of *Iqbal* and *Twombly* to state a valid claim under the ADEA.  (*See* Doc. 9 at 12; Doc. 13 at 4.)  The court agrees.  Indeed, while DaCosta's Complaint pleads "'enough factual matter (taken as true) to suggest' the [ADEA's first two elements]," *see Rivell*, 520 F.3d at 1309 (quoting *Watts*, 495 F.3d at 1295), it is wholly deficient with respect to the latter two elements, see *Kelliher*, 313 F.3d at 1275.  For example, to show an "adverse employment action," the Eleventh Circuit requires that a plaintiff allege "an 'ultimate employment decision' or make some other showing of substantiality," i.e. "'a *serious and material* change in the terms, conditions, or privileges of employment.'" *Crawford*, 529 F.3d at 970-71 (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001)).  However, as the Board points out, (*see* Doc. 9 at 12),

---

[11] Decisions of the United States Court of Appeals for the Fifth Circuit issued prior to the close of business on September 30, 1981, are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

16

DaCosta's Complaint fails to allege what promotion the Board denied him, or when this decision occurred, (*see generally* Doc. 1).   What's more, regarding the ADEA's fourth element, DaCosta's Complaint fails to mention who the Board awarded the promotion to, or even that it awarded the position to someone under the age of forty.  (*See generally id.*)  Such allegations are necessary to satisfy *Twombly*.  *See* 550 U.S. at 545.

For all that, it remains that "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."  *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (footnote omitted);[12] *see also Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, (M.D. Ala. 2007) ("If a defendant needs more information to answer a complaint, the proper response is for that defendant to move for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure, rather than to move for dismissal," (citing *Anderson v. Dist. Bd. of Trustees Cent. Fla. Comm.*, 77 F.3d 364, 366 (11th Cir. 1996))).   Accordingly, while DaCosta's failure to promote claim under the ADEA is otherwise due to be dismissed, the court will allow DaCosta to amend his Complaint.  In the Amended Complaint, as a separate count, DaCosta may reassert a discrete claim for failure

---

[12] In *Wagner*, the Eleventh Circuit only overruled *Bank* with respect to plaintiffs who are represented by counsel, noting specifically that the opinion "decide[s] and intimate[s] nothing about a party proceeding pro se."  *See* 314 F.3d at 542 & n.1.  And again, while the Board argues that "[DaCosta] is now represented by legal counsel and therefore should no longer be afforded the liberal construction and lenient standard [given to *pro se* plaintiffs]," (*see* Doc. 13 at 2), it remains that DaCosta filed his Complaint prior to retaining counsel, (*see* Doc. 1 at 8; Doc. 2; Doc. 3).

to promote under the ADEA.[13]


4.    <u>COUNT SEVEN</u>

In the Complaint's final count, Count Seven, DaCosta alleges retaliation under Title

VII, § 1981, the ADEA, the AADEA, and the FMLA.[14]  (Doc. 1 at ¶ 19.)  To state a *prima*

*facie* case for retaliation under these statutes, a plaintiff must demonstrate: (1) "that he

engaged in statutorily protected activity," (2) that "he suffered a materially adverse action,

and" (3) that "there was some causal relation between the two events."[15]  *Goldsmith v. Bagpy*

*Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington N. & Sante Fe*

*Ry. Co. v. White*, 548 U.S. 53, 59-70 (2006)).[16]

---

[13] The same applies with respect to DaCosta's failure to promote claim under the AADEA.

[14] The court agrees that in Count VII, DaCosta asserts his retaliation claims "in a shotgun fashion." (Doc. 9 at 12.)  In his Amended Complaint, DaCosta must replead these claims in separate counts, with each count containing no more than one discrete claim for relief

[15] As DaCosta correctly points out, (*see* Doc. 11 at 11), in considering whether a plaintiff has stated a *prima facie* case for retaliation, "[t]he causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'"  *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)) (internal quotation marks omitted).

[16] While *Goldsmith* only involved retaliation claims under Title VII and § 1981, *see* 513 F.3d at 1277, the *prima facie* elements are the same under the ADEA, *see Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993), the AADEA, *see Robinson*, 964 So. 2d at 1228, and the FMLA, *see Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006).  However, under the FMLA, the plaintiff "faces the increased burden of showing that his employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (quoting *King v. Preferred Tech. Group*, 166 F.3d 887, 891 (7th Cir. 1999)).

In the instant case, the Board maintains that each of DaCosta's retaliation claims lack factual allegations to support at least one of the necessary elements, and therefore all are due to be dismissed. (*See* Doc. 9 at 13-14.) Specifically, the Board first argues that nothing in Charge I demonstrates that "[DaCosta] was engaged in a statutorily protected activity," as DaCosta had alleged only that he requested an investigation into "several matters," without identifying the content of those matters. (*Id.* at 13.) Next, with regard to Charge II, the Board acknowledges that by filing Charge I, DaCosta has satisfied the "statutorily protected activity" prong for his Title VII retaliation claim, and further that, given his March 7, 2008 termination, he has likewise alleged a "materially adverse action." (*Id.* at 14.) However, the Board advocates that DaCosta "has failed to properly allege sufficient facts to establish his being discharged was causally connected to the filing of [Charge I]." (*Id.*) Additionally, the Board also reasons that because Charge I only alleged a violation of Title VII, filing it does not satisfy the "statutorily protected activity" element for any of DaCosta's remaining retaliation claims. (*Id.*) As such, the Board advocates that all of DaCosta's retaliation claims are deficient, and should be dismissed. (*Id.*)

In response, DaCosta admits that his Complaint fails to state a *prima facie* case for retaliation under § 1981, the ADEA, and the AADEA. (Doc. 11 at 10, 13.) Nevertheless, DaCosta asks that the court allow him to amend his Complaint to remedy the defects, citing that "leave to amend should be freely given when justice so requires." (*Id.* at 15.) The court agrees. Simply put, while DaCosta's § 1981, ADEA, and AADEA retaliation claims are

indeed deficient, for the same reasons stated above with respect to DaCosta's failure to promote claim under the ADEA, *see supra* note 12 and accompanying text, the court will allow DaCosta to replead these claims in an Amended Complaint.

By contrast, DaCosta argues that his Complaint does state a *prima facie* case for retaliation under Title VII and the FMLA. (Doc. 11 at 9-13.) Primarily, DaCosta maintains that the temporal proximity between his filing of Charge I on February 15, 2008, his return from FMLA leave on February 18, 2008, and the date of his termination, March 7, 2008, provides sufficient factual allegations and circumstantial evidence of a causal connection to adequately plead retaliation under Title VII and the FMLA. (*See id.* at 9, 12-13.) Also, as an additional basis regarding his Title VII retaliation claim, DaCosta concedes that, without more, Charge I's statement that he requested that the Board open an investigation into "several matters" is insufficient. (*See id.* at 11-12; Doc. 9 at Ex. A.) But, DaCosta notes that Charge I also alleges that the Board retaliated against him "when [he] complained of disparate treatment," and that, when "[v]iewing [these two statements] together . . . it is clear that [his internal] complaint to management [, and request for an investigation,] was about disparate treatment." (Doc. 11 at 12; Doc. 9 at Ex. A.) As a result, and pointing out that the Board thereafter denied him training and education, DaCosta submits that the Board's response to his internal complaint likewise demonstrates the validity of his Title VII retaliation. (*See* Doc. 11 at 11-12.)

Initially, the court agrees with the Board that DaCosta's filing of an internal complaint

regarding "several matters" does not provide "'enough factual matter (taken as true) to suggest' the [statutorily protected activity element of Title VII]," *see Rivell*, 520 F.3d at 1309 (quoting *Watts*, 495 F.3d at 1295).  Indeed, even accepting DaCosta's interpretation that "several matters" refers to disparate treatment, (*see* Doc. 11 at 12), "disparate treatment" remains a mere legal conclusion, *see Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (noting that courts are not "required to accept the labels and legal conclusions in the complaint as true," (citing *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009))), and DaCosta has not offered any factual allegations as to what exactly constituted "disparate treatment," (*see generally* Doc. 1; Doc. 11).

That said, the court nonetheless agrees that the temporal proximity between when DaCosta filed Charge I, when he returned from FMLA leave, and when the Board terminated his employment, provides enough fact to "raise a right to relief above the speculative level." *See Rivell*, 520 F.3d at 1309 (quoting *Twombly*, 550 U.S. at 545).  As DaCosta suggests, (*see* Doc. 11 at 10, 12-13), "[c]lose temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection,'" *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).  Here, the Board had employed DaCosta for approximately eleven years when, only twenty-one days after he filed Charge I, and only eighteen days following his return from FMLA leave, the Board terminated his employment. (*See* Doc. 1 at ¶¶ 7, 9.)

21

While such temporal proximity, without more, would likely be insufficient for DaCosta's Title VII and FMLA retaliation claims to survive summary judgment, which DaCosta recognizes, (*see* Doc. 11 at 13), the court finds that, when "construed in the light most favorable to [DaCosta]," *see Rivell*, 520 F.3d at 1309 (citing *Hoffman-Pugh*, 312 F.3d at 1225), the proximity does provide enough factual matter for the claims to survive a Rule 12(b)(6) motion to dismiss. For that reason, the Board's Motion to Dismiss is due to be denied with respect to DaCosta's Title VII and FMLA retaliation claims.

5.     PUNITIVE DAMAGES

Lastly, the Board maintains that despite DaCosta's claim for punitive damages, "the Board is a governmental entity," and, "[a]s such, [DaCosta] cannot recover punitive damages." (Doc. 9 at 16.) DaCosta has also "concede[d] that punitive damages are not recoverable against the [Board]," (Doc. 11 at 14), and, therefore, the Board's Motion to Dismiss is due to be granted as to DaCosta's claim for punitive damages.

B.     THE BOARD'S MOTION TO STRIKE, (DOC. 7)

In its Motion to Strike, the Board asks that court enter an order striking paragraphs 11 and 12 from DaCosta's Complaint. (Doc. 7 at 1, 4.) Rule 12(f) provides in pertinent part that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

As support for its Motion, the Board advocates that, "[i]n part, paragraphs 11 and 12 of [DaCosta's] Complaint are redundant since [DaCosta] alleges in paragraphs 6 and 7 of his Complaint that he has fulfilled all conditions precedent to filing his lawsuit by filing charges of discrimination with the [EEOC]."  (Doc. 7 at 3.)  Also, the Board maintains that "paragraphs 11 and 12 contain statements that are immaterial, impertinent or scandalous," referencing those parts of the paragraphs that detail the EEOC's evidentiary findings, and which recount the Board's refusal to engage in conciliation efforts.  (*Id.*)  The Board argues that under Rules 403[17] and 408[18] of the Federal Rules of Evidence, and pursuant to Fed. R.

---

[17] Rule 403 states that: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

[18] Rule 408 provides that:

**(a) Prohibited uses.**–Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

**(1)** furnishing or offering or promising to furnish–or accepting or offering or promising to accept–a valuable consideration in compromising or attempting to compromise the claim; and

**(2)** conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement priority.

**(b) Permitted uses.**–This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a).  Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

Civ. P. 12(f), these paragraphs are due to be stricken from DaCosta's Complaint.  (*Id.* at 4.)

In his Response to the Board's Motion to Strike, DaCosta agrees that, "to the extent the language in paragraphs 11 and 12 of the Complaint is redundant, the Court may strike such language," conceding that "those portions of paragraphs 11 and 12 which state: 'Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII, § 1981, and the ADEA,'" are indeed repetitive.  (Doc. 12 at 1 (quoting Doc. 1 at ¶¶ 11-12).) However, with respect to those parts of paragraphs 11 and 12 that reference the EEOC's administrative findings, and which recount the Board's refusal to engage in conciliation efforts, DaCosta claims that neither statement should be stricken.  (*Id.* at 1-3.)

In the Eleventh Circuit, "EEOC determinations [are] 'highly probative,'" *Barfield v. Orange County*, 911 F.2d 644, 650 (11th Cir. 1990) (quoting *Smith v. Universal Servs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1972)); still, "there may be circumstances in which that probative value, although properly considered by a trial judge in a bench trial, nonetheless is outweighed by the danger of creating unfair prejudice in the minds of the jury," *id.* (citing *Johnson v. Yellow Freight Sys.*, 734 F.2d 1304, 1308 & n.1 (8th Cir. 1984)).  One such circumstance is where the EEOC determination "contains legal conclusions in addition to its factual content."  *See id.* (citations omitted).

In the instant case, the court agrees that, in addition to paragraph 11 and 12's redundant statements, the statements that recite the EEOC's evidentiary findings, i.e. that "[t]he evidence obtained during the investigation establishes reasonable cause to believe that

[the Board] discharged [DaCosta] in retaliation for filing an EEOC charge," (Doc. 1 at ¶ 11), should also be stricken as legal conclusions that could "creat[e] unfair prejudice in the minds of the jury," *see Barfield*, 911 F.3d at 650 (citation omitted).  The court agrees that the EEOC's recount of the Board's alleged lack of participation in conciliation efforts should be stricken.


## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that the Board's Motion to Dismiss, (Doc. 8), is due to be granted in part and denied in part, and its Motion to Strike, (Doc. 7), is due to be granted.  An Order in conformity with this Memorandum Opinion will be entered contemporaneously.

**DONE**, this 9th day of August, 2010.


*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE